IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JODY JOLENE BERRY,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | No. C14-3025-LTS<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Jody Jolene Berry seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Social Security Disability benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Berry contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision will be affirmed.

## *I.*    *BACKGROUND*

Berry was born in 1966, has a high school education and has past work as a cashier and sales clerk. AR 21-22. She filed an application for DIB on March 24, 2011, alleging a disability onset date of April 15, 2009. AR 10, 127-29. She alleged disability due to chronic neck and back pain, major depression, anxiety and post-traumatic stress disorder. AR 129. Her claims were denied initially and on reconsideration. AR 10, 51-54, 62-65. Berry then requested a hearing before an Administrative Law Judge (ALJ), which was held on February 12, 2013, before ALJ Thomas M. Donahue. AR 8, 30-47. During the hearing, Berry and a vocational expert (VE) testified. AR 30-47. On March 29,

2013, the ALJ issued a decision denying Berry's claim. AR 10-23. Berry sought review by the Appeals Council, which denied review on March 7, 2014. AR 1-5. The ALJ's decision thus became the final decision of the Commissioner. AR 1; 20 C.F.R. § 404.981.

On May 5, 2014, Berry filed a complaint (Doc. No. 3) in this court seeking review of the Commissioner's decision. On June 18, 2014, with the parties' consent (Doc. No. 7), the Honorable Mark W. Bennett transferred this case to me for final disposition and entry of judgment. The parties have briefed the issues and the matter is now fully submitted and ready for decision.

## II. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *accord* 20 C.F.R. § 404.1505. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 404.1521(b)(1)-(6); *see also Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see also Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant

work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1545(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, while the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. ALJ'S FINDINGS

The ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

(2) The claimant has not engaged in substantial gainful activity since April 15, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

(3) The claimant has the following severe impairments: cervical degenerative disc disease; mild degenerative disc disease of the lumbar spine; mild chronic obstructive pulmonary disease; major depressive disorder; panic disorder with agoraphobia; personality disorder, NOS; substance use disorder with alcohol, meth, and pain killers (20 CFR 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit 2 hours at a time for 6 hours of an 8-hour workday. She can stand 2 hours at a time for 6 hours of an 8-hour workday. She can walk 3 blocks at a time. She can occasionally climb ramps and stairs; balance; stoop; kneel; crouch; crawl; and bend. She must avoid ladders, ropes and scaffolds. She should avoid working at heights. She would need an SVP of 3.[1]

---

[1] "SVP" refers to Specific Vocational Preparation, which is defined in Appendix C of the *Dictionary of Occupational Titles* as being "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." An occupation with an SVP requirement of 3 equates to preparation exceeding one month up to and including three months. *See Dictionary of Occupational Titles*, Appendix C.

(6) The claimant is capable of performing past relevant work as a cashier and sales clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

(7) The claimant has not been under a disability, as defined in the Social Security Act, from April 15, 2009, through the date of this decision (20 CFR 404.1520(f)).

AR 13-23.

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support

is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Allen raises the following arguments in contending that the ALJ's decision is not supported by substantial evidence:

    (1)    The ALJ erred in finding that Berry's migraine headaches were not a severe impairment.

    (2)    The ALJ erred in failing to consider the effects of Berry's mental impairments on her RFC.

7

> (3) The ALJ erred by failing to consider the medical record as a whole.

I will address these arguments separately.

*1. Migraines*

*A. Applicable Standards*

At Step Two, the ALJ must consider whether a medically determinable impairment is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). If the impairment would have no more than a minimal effect on the claimant's ability to work, it is not severe. *Page*, 484 F.3d at 1043.

It is the claimant's burden to establish that his or her impairment or combination of impairments is severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Kirby*, 500 F.3d at 708 (internal citation omitted). When a claimant has multiple impairments, "the Social Security Act requires the Commissioner to consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

In determining the severity of a medically determinable impairment, the ALJ must consider a claimant's symptom-related limitations and make a credibility finding on his or her alleged limitations. *See Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)

(the ALJ erred at Step Two by failing to evaluate the claimant's subjective complaints); *see also* SSR 96-7p, 1996 WL 374186 (July 2, 1996). While the ALJ may conclude that the medical evidence does not support a claimant's subjective allegations, this is only one factor that should be considered. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) ("The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints."). The ALJ is required to explicitly discredit a claimant and provide reasons. *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) ("[A]n ALJ who rejects such [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints").

## B. *Analysis*

Berry argues the ALJ improperly categorized her migraines as non-severe. However, in reviewing the record closely, I find there is substantial evidence supporting that conclusion. The ALJ provided two reasons for his finding: (a) the migraine headaches occurred infrequently and (b) when they did occur, medications were generally effective in reducing or controlling the symptoms. The ALJ found that "[t]he condition has not caused more than a minimal effect on functioning throughout the time in question." AR 13.

The record (including Berry's own admissions), shows that over a period of nearly four years from the alleged onset date of April 15, 2009, through the hearing date of February 12, 2013, Berry sought treatment for or reported migraine headaches to doctors only seven times. Doc. No. 12 at 4-5. She was treated with medication at the emergency room five times and the records from those treatments indicate medication was effective in reducing her migraine symptoms. AR 559, 574, 581, 594, 868. This evidence demonstrates the infrequency of her migraines and supports the ALJ's decision. In addition, the record does not contain evidence contrary to the ALJ's finding that migraine

headaches caused no more than minimal effects on Berry's functioning during the relevant time. Thus, I find the ALJ's determination that Berry's migraines were not a severe impairment to be supported by substantial evidence on the record as a whole.[2]

## 2.  *Mental Impairments*

### A.  *Applicable Standards*

The claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. The RFC determination is not based exclusively on the medical evidence, or on any one physician's opinion, but on the

---

[2] The Commissioner also argues that an ALJ's failure to find a particular impairment severe at Step Two is not reversible error if the ALJ finds at least one other impairment to be severe. Doc. No. 13 at 6. This argument is logical. The purpose of Step Two is "to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring). In formulating a claimant's RFC the ALJ must consider the combined effects of all medically-determinable impairments, whether severe or non-severe. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)). Thus, so long as the ALJ does not terminate the sequential evaluation process at Step Two, there is little basis to argue that the characterization of one impairment as "non-severe" constitutes reversible error. While I accept the Commissioner's argument, I note that her brief includes a quotation that wrongly purports to derive from page 156 of *Bowen*. *See* Doc. No. 13 at 6. That page, which is part of Justice O'Connor's concurring opinion, does not contain the represented quotation. Nor, so far as I can tell, does that quotation appear elsewhere in any of the *Bowen* opinions. While I have no doubt that this error was inadvertent, I point it out so it will not recur in future briefs.

record as a whole. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). While the RFC assessment draws from medical sources, it is ultimately an administrative determination reserved to the Commissioner. *Id.*

At Step Four, the claimant has the burden to prove his or her RFC and the ALJ determines the RFC based on all relevant evidence. *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Further, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "The ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must only include those impairments that are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004). The mere presence of a mental disorder does not automatically indicate a severe disability. *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

### B. *The ALJ's Findings*

The ALJ determined that Berry had the RFC to perform light work except that she can lift and carry twenty pounds occasionally and ten pounds frequently. AR 15. The ALJ also limited Berry to an SVP of 3. *Id.* In making these findings, the ALJ reviewed Berry's testimony and medical history and cited to various medical records stating that Berry's cognition, concentration and attention were within normal ranges. Specifically the ALJ noted:

> The claimant underwent a psychiatric evaluation by a nurse practitioner on March 25, 2001 (Exhibit 14F). The claimant maintained she had no alcohol for the past 2 years. The claimant alleged she had trouble concentrating.

> She claimed to have panic attacks which included shortness of breath, tachycardia, feeling like she was unable to move. The claimant was tearful with depressed mood. <u>However, the nurse practitioner observed that the claimant's cognition and attention were normal. Her memory was intact. Insight and judgment were fair. Her thought processes were intact. Her appearance was well groomed. Her attitude was cooperative. Her motor activity and speech were normal</u>.
>
> *****
>
> The claimant's allegation of trouble concentrating is inconsistent with the observation of the nurse practitioner during the evaluation. The inconsistencies suggest that the claimant had not been accurate in her representation of information. <u>The inconsistencies, including the negative/normal objective findings, undermine the undersigned's willingness to fully credit the claimant's allegations concerning the existence, persistence and intensity of symptoms and functional limitations</u>.

AR 18, 19 [emphasis added]. The ALJ also noted that Berry saw improvement with certain medications, had a flare-up of her symptoms due to substance abuse and then saw subsequent improvement, explaining:

> <u>The claimant reported some improvement with medication (Exhibit 25F, p.6)</u>. In May 2011 the claimant maintained her anxiety level was high. The medications BuSpar and risperdol were increased. The medication Xanax was started (Exhibit 25F, page 8). The claimant reported significant improvement by June 2011. The claimant reported she was sleeping well. Appetite was good. Anxiety was well controlled. There were no side effects from medications (Exhibit 25F, page 9). <u>The treatment note indicates the effectiveness of medication in reducing or controlling symptoms when used appropriately</u>.
>
> From July 29, 2011 through November, the claimant reported increased symptoms despite medications (Exhibit 25F). However, she was admitted to Prairie Ridge Addiction Treatment Services on November 28, 2011 through December 31, 2011 for treatment of polysubstance dependence, including opioid, alcohol, and cocaine dependence (Exhibit 24F). <u>A reasonable inference is that her flare of symptoms was due to substance abuse</u>. On January 9, 2012, the nurse practitioner noted the clamant had been taken off of narcotic medications. The claimant state she was sleeping better, her appetite was good and she was feeling better since she was off

her pain medication. Her depression was stable (Exhibit 25F, page 17). In May 2012 her depression improved minimally (Exhibit 25F, page 22).

The claimant missed her appointment in June and was not seen again until August. She complained of feeling depressed, anxious and tired. She requested additional medication. The doctor increased the dose of the medication risperdol. The doctor did not indicate any objective findings of difficulties with attention, concentration and memory. The doctor did not indicate problems with her thought processes, motor activity or speech (Exhibit 25F, page 24). The claimant alleged she felt depressed in mid-September 2012. The medication Wellbutrin was increased and the medication Desyrel was to be taken daily (Exhibit 25F, page 26). The claimant cancelled appointments in October and November. <u>In December 2012 the claimant reported that her husband had a 3rd surgery and was struggling. She was busy looking after him. Her depression waxed and waned, at that time she was "Okay" (Exhibit 25F, page 30). The treatment note is a further indication of the effectiveness of medication in reducing or controlling symptoms when used appropriately</u>.

AR 19 [emphasis added].

The ALJ also reviewed the state agency psychological consultants' opinions and afforded some weight to them:

The evidence was reviewed by two state agency psychological consultants. The state agency consultants are nonexamining psychologists who give a professional opinion as to the claimant's residual functional capacity based on the claimant's medical record. <u>The undersigned has considered these assessments in determining the claimant's residual functional capacity, but has also considered evidence not available to the state agency medical consultants. Thus, these assessments have been given some weight in accordance with Social Security Ruling 96-6p</u>. The medical opinions of the state agency psychological consultants are fairly well supported and consistent with other evidence and are given such significant weight as supports the residual functional capacity found for the claimant by the undersigned. The medical opinions support a finding that the requirements for no listed impairment had been met or equaled. The medical opinions support the ultimate finding that the claimant has not been disabled.

AR. 20 [emphasis added].

13

### C. The Parties' Arguments

Berry argues that the ALJ ignored limitations described by Dr. Christensen, one of the state agency psychological consultants. Specifically, she contends that the ALJ did not appropriately consider Dr. Christensen's findings that (a) "[b]ecause of psychological and emotional factors, attention and concentration may be limited" and (b) Berry "may have interpersonal problems in the workplace." AR 979. Berry contends that the ALJ failed to explain why the RFC did not incorporate the concept of limited concentration and pace as indicated by Dr. Christensen. Doc. No. 12 at 15. She further argues that restrictions based on that concept should have been included in the RFC. She contends the case should be reversed and remanded for an award of benefits because of these alleged errors.

The Commissioner argues the ALJ's decision should be affirmed because the ALJ set forth a sufficient explanation of his decision. The Commissioner asserts the ALJ noted that he based the RFC finding on all the evidence in the record and that the state agency consultants, including Dr. Christensen, did not have all of that evidence when they prepared their opinions. Additionally, the Commissioner argues that the ALJ was not required to cite to every piece of evidence in the record to support his decision and that the ALJ gave good reasons for the weight he gave the various opinions, including Dr. Christensen's. The Commissioner argues that the ALJ adequately explained why the RFC did not include limitations concerning concentration and pace and that the court cannot reweigh the evidence.

### D. Analysis

The Commissioner is correct that ALJ was not required to list and reject every possible limitation, particularly those limitations that were not supported by the record as a whole. *McCoy*, 648 F.3d at 615. Nor was the ALJ required to cite to every piece of evidence that supported his decision regarding any limitations he found. *Wildman*, 596

F.3d at 966. Rather, the ALJ was only required to provide good reasons for his decision. *Wagner*, 499 F.3d at 851. Here, I find that the ALJ gave good reasons for not including limitations on concentration or pace in Berry's RFC. As such, I conclude there is substantial evidence on the record as a whole to support that decision.

The ALJ explained that Berry's doctors did not highlight any problems with her pace, attention, cognition, concentration, memory or judgment and noted that her mental health issues, including mood, pace and concentration, improved with medication. AR 18, 19. Berry acknowledges that medication helps treat and control her symptoms. Doc. No. 12 at 10-11. These factors support the ALJ's determination.

In addition, the ALJ noted that Berry was able to drive during the relevant time period, meaning "she had a good ability to attend and concentrate because she must be aware of, and respond appropriately to, changing traffic situations, traffic signs, and traffic signals, at times instantaneously." AR 14. The ALJ also explained that Berry was able to pay bills and handle accounts and that her daily activities demonstrated a good ability to concentrate. *Id.* These findings derived from Berry's function reports (AR 168-91) and provide further support for the ALJ's conclusion.

Finally, the ALJ pointed out that Berry missed appointments with her mental health provider in April, June, September, October and November 2012. At her appointment in December 2012, Berry explained that she had not been in for the past few months because she was caring for her husband after surgery and stated that while her depression waxes and wanes, she is "okay." AR 19, 1035-1042. Berry's ability to care for herself and her husband for a lengthy period of time without mental health treatment further supports the ALJ's finding that her concentration and pace were not limiting.

Berry, however, claims that the ALJ erred by failing to give sufficient weight to the opinion of Dr. Christenson, a state agency consultant. Dr. Christenson reviewed records and provided his opinion in May 2011, nearly two years prior to the hearing. AR 979. The ALJ noted that by the time of the hearing, the record contained additional evidence that had not been available when Dr. Christenson conducted his analysis. AR

20. Based on the additional evidence, the ALJ found that Dr. Christenson's opinion was entitled to only some weight. *Id.* This was not error. The ALJ was required to weigh the medical opinions based on the record as a whole. *Bentley*, 52 F.3d at 787. The ALJ provided good reasons, supported by substantial evidence, for the weight he afforded to Dr. Christenson's opinion.

Based on my review of the entire record, and in light of the standard of review I must follow, I reject Berry's argument that the ALJ erred in failing to consider the effect of her mental impairments on her RFC. The RFC did consider those effects and provided good reasons for his decision to include no limitations concerning concentration or pace in Berry's RFC.

## 3. *The Record As A Whole*

### A. *Applicable Standards*

When a claimant has multiple impairments, the Act requires that the Commissioner consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling. *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000); *see also* 20 C.F.R. § 404.1523. If the ALJ discusses the claimant's various impairments and subsequently finds that the impairments do not prevent the claimant from performing past relevant work, this is sufficient to show that the ALJ properly considered whether the impairments were disabling in combination. *Browning v. Sullivan*, 958 F.3d 817, 821 (8th Cir. 1992). "To require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Id.* (quoting *Gooch v. Secretary of H.H.S.*, 833 F.2d 589, 592 (6th Cir. 1987)).

### B. *Analysis*

Berry argues the ALJ did not properly consider all of her impairments, including ulcerative colitis and migraine headaches, in combination while finding that she was not disabled and could perform light work with certain exceptions. She contends that although her ulcerative colitis was in remission during the relevant time period, the ALJ was still required to consider the ailment and its indirect effects on her physical and mental health. She argues that the ALJ erred by failing to discuss and explain each of her impairments separately, as well as in combination.

I disagree. The ALJ did not ignore any of Berry's impairments. He discussed migraine headaches and ulcerative colitis separately and explained how those impairments impacted his decision. AR 13, 15, 17-18. I described his discussion of migraines in Section V(1), *supra*. As for colitis, the ALJ noted that on April 14, 2009, Berry complained of abdominal pain and distention after drinking two bottles of magnesium citrate to resolve constipation. She underwent a computerized tomography scan which showed her colon was fluid-filled but was otherwise negative. AR 17. The ALJ stated that the negative objective medical findings were consistent with the minimal and non-disabling nature of Berry's stated problems. Additionally, on April 21, 2009, Berry underwent a colon exam which established her ulcerative colitis was in remission. AR 13, 505. The ALJ noted that Berry acknowledged she was not taking medications for colitis and that the condition was under control. AR 18, 710.

The ALJ addressed all of Berry's claimed impairments, including migraine headaches and ulcerative colitis. In formulating her RFC, he stated that he had "considered all symptoms" and referenced SSR 96-4p, which discusses the evaluation of symptoms deriving from any medically-determinable impairments. AR 15. Earlier, the ALJ correctly articulated the requirement that in formulating a claimant's RFC, he "must consider all of the claimant's impairments, including impairments that are not severe."

17

AR 12. There is no reason to believe that the ALJ failed to apply the correct analytical framework.

In discussing Berry's RFC, the ALJ provided a lengthy analysis of the entire record and explained his findings. AR 15-21. Having already acknowledged and discussed all of Berry's impairments, the ALJ was not required to provide a separate discussion of those impairments "in combination." *Browning*, 958 F.3d at 821. I find that the ALJ properly considered all medically-determinable impairments and that his formulation of Berry's RFC is supported by substantial evidence on the record as a whole.

## VI. CONCLUSION

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Berry was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **affirmed**. Judgment shall be entered in favor of the Commissioner and against Berry.

**IT IS SO ORDERED.**

**DATED** this 24th day of February, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE